THIS OPINION HAS NO PRECEDENTIAL VALUE.  IT SHOULD NOT BE CITED OR RELIED ON AS PRECEDENT IN ANY PROCEEDING EXCEPT AS PROVIDED BY RULE 239(d)(2), SCACR.
THE STATE OF SOUTH CAROLINA
In The Court of Appeals

 
 
 
 The State, Respondent,
 v.
 Dennis Harold Crowe, Jr., Appellant.
 
 
 

Appeal From Oconee County
 Alexander S. Macaulay, Circuit Court Judge

Unpublished Opinion No. 2007-UP-077
Submitted February 1, 2007  Filed February 13, 2007

AFFIRMED

 
 
 
 Chief Attorney Joseph L. Savitz, III, of Columbia, for Appellant
 Attorney General Henry Dargan McMaster, Chief Deputy Attorney General John W. McIntosh, Assistant Deputy Attorney General Donald J. Zelenka, Assistant Attorney General Melody J. Brown, all of Columbia; and Solicitor Christina Theos Adams, of Anderson, for Respondent.
 
 
 

PER CURIAM:  Dennis Harold Crowe, Jr. appeals his murder conviction.  He argues the trial court erred in refusing to charge the jury on involuntary manslaughter.  We affirm.[1]
FACTS
At approximately 3 A.M. on June 20, 2003, Dennis Harold Crowe, Jr. sought emergency assistance for his girlfriend Roberta Flora Davis (Bertie).  He informed the 911 dispatcher that Bertie was not breathing, and he thought she was dead.  An ambulance and the police were dispatched to the residence which Crowe and Bertie shared at 111 Short Street in Salem.  
Upon arriving at the residence, the police found Bertie lying dead in her bed.  Crowe, who appeared to be inebriated, stated that she had fallen during the day.  The police noted that three other individuals, all of whom appeared inebriated, were present at the residence.  
The Oconee County Coroner (Coroner) arrived at the residence at approximately 4:03 A.M. and spoke with Crowe concerning Bertie.  As per Coroners testimony, Crowe informed Coroner that he and Bertie had been drinking all day, and she fell.  Crowe told Coroner that he attempted to assist Bertie into the cab of a pick-up truck, but when this was unsuccessful, he placed her in the bed of the truck and drove her to their residence where she fell again.  Coroner further testified that Crowe stated that Bertie urinated and defecated on herself whereupon Crowe and another female bathed Bertie and put her to bed at 6:30 P.M.   
Dr. Brett Woodard performed an autopsy on Bertie and determined her cause of death to be a subdural hematoma brought on by blunt force trauma to her head.  Dr. Woodard found there were twenty or twenty five definite blows sustained by Bertie and estimated that if overlapping blows were calculated, she was struck approximately forty times.  While he could not rule out that any single one of Berties injuries were caused by a fall, Dr. Woodard found her injuries to be inconsistent with a fall or multiple falls and consistent with being repeatedly struck during an attack.  Dr. Woodard testified that Bertie had defensive wounds on her hands, arms, legs and feet as though she were defending herself from an attack.  Further, Dr. Woodard determined to a reasonable degree of medical certainty that the subdural hematoma sustained by Bertie was caused by a blow to her head and not a fall.     
There was evidence presented in the form of testimony from multiple witnesses that Crowe had previously been physically abusive to Bertie.  One witness testified that three days prior to Berties death, Crowe stated he should kill Bertie for lying to him concerning the fact that she had dated a black man thirty years prior to dating him.  
An Oconee County jury found Crowe guilty of murder, and the trial court sentenced him to forty-seven years imprisonment.  This appeal followed.         
STANDARD OF REVIEW
An appellate court will not reverse the trial judges decision regarding jury charges absent an abuse of discretion.  Clark v. Cantrell, 339 S.C. 369, 389, 529 S.E.2d 528, 539 (2000).  An abuse of discretion occurs when the trial courts ruling is based on an error of law or, when grounded in factual conclusions, is without evidentiary support.  Id.  If any evidence exists to support a jury charge, the trial judge should grant the requested charge.  State v. Burriss, 334 S.C. 256, 262, 513 S.E.2d 104, 108 (1999).  A refusal to grant a requested jury charge which states a sound principle of law applicable to the case at hand is an error of law.  Clark, 339 S.C. at 390, 529 S.E.2d at 539.   A court should only refuse to charge the jury on manslaughter if there is no evidence tending to reduce the crime from murder to manslaughter.  State v. Knoten, 347 S.C. 296, 302, 555 S.E.2d 391, 394 (2001).
LAW/ANALYSIS
Crowe contends the trial court erred in denying his request to charge the jury on involuntary manslaughter.  We disagree.

 Involuntary manslaughter is defined as either (1) the killing of another without malice and unintentionally, but while one is engaged in the commission of some unlawful act not amounting to a felony and not naturally tending to cause death or great bodily harm; or (2) the killing of another without malice and unintentionally, but while one is acting lawfully, with reckless disregard for the safety of others.

Knoten, 347 S.C. at 309, 555 S.E.2d at 398.  Involuntary manslaughter requires a finding of criminal negligence, which is statutorily defined as a reckless disregard of the safety of others.  State v. Crosby, 355 S.C. 47, 52, 584 S.E.2d 110, 112 (2003); S.C. Code Ann. § 16-3-60 (Supp. 2006).  Accordingly, a defendant is entitled to an involuntary manslaughter charge only where the evidence establishes his reckless disregard for the safety of others.  
In this matter, the record fails to establish the necessary elements for a charge of involuntary manslaughter.  The first of the above definitions is immediately eliminated from our consideration because in Crowes account of the events leading to Berties death, there is no evidence that he was engaged in any unlawful act.  However, Crowe asserts he was entitled to an involuntary manslaughter charge under the second definition because his continuing to stand Bertie up just so she could fall down again constituted a reckless disregard for her safety.  However, there is no evidence in the record that this occurred.[2]  The only evidence regarding Crowes characterizations of his actions with Bertie illustrates an attempt to help her.  In fact, Crowes trial attorney stressed the fact that Crowe should receive a manslaughter charge because he helped Bertie.  He stated that because of the facts that were brought out as far as helping including calling 911, Crowe was entitled to a manslaughter charge.  We fail to see how Crowes account of the events in which he attempted to help Bertie could constitute the reckless disregard for her safety necessary to entitle him to an involuntary manslaughter charge.  Because the record demonstrates as a matter of law the absence of a required element of involuntary manslaughter, the trial judge did not err in refusing to charge on that offense.
CONCLUSION
We find no error by the trial court in refusing to charge the jury on involuntary manslaughter.  Based on the foregoing, Crowes conviction is
AFFIRMED.
ANDERSON, KITTREDGE, and SHORT, JJ., concur.

[1] We decide this case without oral argument pursuant to Rule 215, SCACR.
[2] In Crowes request for an involuntary manslaughter charge, which was held outside the jurys presence, his attorney stated seeing Bertie fall down repeatedly and not helping would be reckless disregard for her safety.  There is no mention of standing her up just so that she could fall down again until it is noted in Crowes appeal brief.  In any event, neither of these assertions appears in the evidence in the record on appeal.